**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| WHIRLPOOL CORPORATION, AND MAYTAG SALES, INC. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES; OFFICE OF THE U.S. TRADE REPRESENTATIVE; KATHERINE C. TAI, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION; AND U.S. CUSTOMS & BORDER PROTECTION COMMISSIONER, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Court. No. 21-00157

## **COMPLAINT**

Plaintiffs Whirlpool Corporation ("Whirlpool") and Maytag Sales, Inc. ("Maytag"), by and through their attorneys, allege and state as follows:

1.   The Office of the United States Trade Representative ("USTR") investigated China's unfair intellectual property policies and practices pursuant to 19 U.S.C. § 2411, Section 301 of the Trade Act of 1974 (the "Trade Act"). Section 304 of the Trade Act, 19 U.S.C. § 2414, required USTR to determine what action to take, if any, within 12 months after initiation of that investigation. Within that time period, USTR promulgated two lists of products, "List 1" and "List 2," subject to duties. However, after the 12-month window of time had lapsed, USTR promulgated additional lists of products subject to duties, "List 3" and "List 4." After the initial promulgation of these additional lists, USTR changed the level of duty applicable to the affected products on several occasions, in violation of Sections 301 and 307 of the Trade Act.

2.    Whereas Section 307 of the Trade Act, 19 U.S.C. § 2417(a), permits USTR to "modify or terminate" "any action…being taken under" Section 301, USTR must first satisfy certain procedural requirements "{b}efore taking any action" to modify or terminate existing measures. USTR did not comply with these procedural requirements.

3.    Section 307(a)'s permission to "modify" action "*being taken*" does not grant authority to enact duties on vast new categories of products many times greater than the duties on those products subject to pre-existing action taken pursuant to Section 301.  USTR unlawfully expanded the category of products subject to duties under Section 301 to include products imported by Plaintiffs.

4.    Whereas USTR claimed in promulgating List 3 that this modification was substantively justified because the "burden…on United States Commerce…of the acts, policies, and practices, that are the subject of such {Section 301} action {being taken} has increased," and/or because "action…being taken…is no longer appropriate," *see* 19 U.S.C. § 2417(a)(1)(B)-(C), it cited grounds falling outside the framework of the original Section 301 investigation into Chinese technological and intellectual property policies and practices.  Simply deeming the existing duties "no longer appropriate," as the USTR did here, does not cure this deficiency.

5.    Defendants' implementation of the List 3 and List 4A duty actions also violates the Administrative Procedure Act ("APA").  USTR (1) failed to provide sufficient opportunity for comment, *e.g.*, requiring interested parties to submit affirmative and rebuttal comments on the same day; (2) failed to consider relevant factors when making its decision, *e.g.*, undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to show a connection between the record facts and the modifications it made.

6.   The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) all duties deposited or paid by Plaintiffs on any products covered by Defendants' various Section 307 modifications, *i.e.*, the various duties levied on products appearing on Lists 3 and/or 4A.

7.   Plaintiffs commenced the instant action to preserve any right to relief that may be established upon a finding that the challenged actions were *ultra vires*.  Plaintiffs challenge only the lawfulness of duties to which *Plaintiffs' entries* of products appearing on "List 3" and/or "List 4" were or will be subject, as discussed below.

## JURISDICTION

8.   The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B).  Alternatively, the Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(D), which confers "exclusive jurisdiction" over matters relating to the "administration and enforcement" respecting such tariffs, duties, fees, or other taxes for reasons other than the raising of revenue.  *Id.* § 1581(i)(1)(D).

## PARTIES

9.   Plaintiffs Whirlpool and Maytag imported products appearing on List 3 and List 4A that were subject to Section 301 duties of varying levels and deposited applicable Section 301 duties with U.S. Customs and Border Protection ("CBP") at the time of entry.  As of the

commencement of this action, CBP has liquidated some, but not all of Whirlpool's and Maytag's entries of List 3 and List 4A merchandise.

10. Defendant United States of America received the disputed duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581.

11. The Office of the United States Trade Representative is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. The Office of the United States Trade Representative conducted the Section 301 investigation at issue and made numerous modifications pursuant to Section 307 that affected the duties applicable to products appearing on List 3 and List 4.

12. Ambassador Robert E. Lighthizer formerly held the position of United States Trade Representative and served as the director of the USTR. In these capacities, now-former Ambassador Lighthizer made numerous decisions regarding List 3 and List 4. At the time of filing this complaint, Robert E. Lighthizer no longer held the position of United States Trade Representative or director of the USTR. On March 17, 2021, Katherine C. Tai was confirmed by the U.S. Senate to succeed Robert E. Lighthizer as the U.S. Trade Representative and currently holds that position. The actions at issue in this complaint were and are being performed in the official capacity of the United States Trade Representative and director of the USTR at the relevant time, whether in an "Acting" capacity or subsequent to confirmation.

13. Defendant CBP is the agency that collects duties on imports. CBP collected payments made by Plaintiffs to account for the duties imposed by USTR under List 3 and List 4.

14. Mark A. Morgan was formerly the Acting Commissioner of CBP. In this capacity, he oversaw CBP's collection of duties paid by Plaintiffs under List 3 and List 4. At the time of

filing this complaint, Mark A. Morgan no longer held the position of Acting Commissioner of CBP. To the best of Plaintiffs' knowledge, Troy Miller is presently performing the duties of CBP Commissioner in an Acting capacity. *See* "Commissioner's Office," *cbp.gov* (last modified Jan. 26, 2021). The actions at issue in this complaint were and are being performed in the official capacity of the Commissioner of CBP at the relevant time, whether in an "Acting" capacity or subsequent to confirmation.

## STANDING

15. Whirlpool and Maytag have standing to sue because they are "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Duties on products appearing on List 3 and/or 4A that were promulgated, imposed, modified, and enforced by Defendants in violation of the requirements of the Administrative Procedure Act and Sections 301, 304, and 307 of the Tariff Act have adversely affected and aggrieved Whirlpool and Maytag because Plaintiffs were required to deposit and pay these unlawful duties.

## TIMELINESS

16. A plaintiff must commence an action under 28 U.S.C. § 1581(i) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). "{A} claim does not accrue until the aggrieved party reasonably should have known about the existence of the claim." *St. Paul Fire & Marine Ins. Co. v. United States*, 959 F.2d 960, 964 (Fed. Cir. 1992).

17. The Court calculates statutory deadlines using the methods prescribed by Rule 6(a) of the Rules of the Court of International Trade. *See, e.g.*, *United States v. Inn Foods, Inc*., 383 F.3d 1319, 1322 (Fed. Cir. 2004); *Bethlehem Steel Corp. v. United States*, 718 F. Supp. 67, 70 (Ct. Int'l Trade 1989).

18. This complaint contests five discrete attempted modifications of Section 301 action undertaken by Defendants, *i.e.*, the imposition of **(1)** 10 percent duties on products found on "List 3"; *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) ("*List 3 10% Modification*"); **(2)** 25 percent duties on products found on "List 3"; *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 25% Modification*"); **(3)** 10 percent duties on products found on "List 4A"; *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019) ("*List 4 10% Modification*"); **(4)** 15 percent duties on products found on "List 4A"; *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019) ("*List 4A 15% Modification*"); and **(5)** 7.5 percent duties on products found on "List 4A"; *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020) ("*List 4A 7.5% Modification*").  Each modification was an unlawful application of 19 U.S.C. § 2417(a), each caused a different harm, and thus each has a different accrual date. *See, e.g.*, *Petrella v. MGM*, 572 U.S. 663, 671 (2014) ("Each wrong gives rise to a discrete "claim" that

6

"accrue{s}" at the time the wrong occurs."); *Palmer v. Bd. of Educ.*, 46 F.3d 682, 686 (7th Cir. 1995) ("A series of wrongful acts . . . creates a series of claims. . . . {T}he fact that {a defendant} has been violating the Constitution for a generation does not permit it to commit fresh violations.").

19. ***Entry*** - To the best of Plaintiffs' knowledge, Plaintiffs entered goods that were subject to duties imposed pursuant to the Section 301 modifications attempted by Defendants.  Specifically, Plaintiffs entered products of China origin classified in tariff subheadings appearing on Annex A of the *List 3 10% Modification* notice ("'List 3' products") that were subject to a requirement to pay 10 percent duties.  Plaintiffs additionally entered "List 3" products that were subject to 25 percent duties, and Plaintiffs continue to enter "List 3" products that are subject to 25 percent duties on an ongoing basis.  Plaintiffs entered products of China origin classified in tariff subheadings appearing on Annex A of the *List 4 10% Modification* notice ("'List 4A' products") that were subject to 15 percent duties.  Finally, Plaintiffs entered "List 4A" products that were subject to 7.5 percent duties, and Plaintiffs continue to enter products on "List 4A" that are subject to 7.5 percent duties on an ongoing basis.  Insofar as Plaintiffs entered products subject to duties imposed by USTR's various modifications less than two years prior to commencing this action, this action is timely.

20. Where the date of entry for certain of Plaintiffs' goods was over two years prior to commencement of this action, this action is nonetheless timely with respect to such entries, insofar as Plaintiff has made other entries subject to the same duties within two years of commencing this action, and previous entries are "factually interdependent" with the later-entered entries for purposes of Plaintiffs' challenge to the validity of the duties and the procedure by which the duties were adopted.  *See Peacock v. Thomas*, 516 U.S. 349, 354 (1996) ("a federal

court may exercise ancillary jurisdiction (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.") (internal citations omitted).

21. *Liquidation* – In the alternative, certain of Plaintiffs' entries subject to duties imposed pursuant to the Section 301 modifications attempted by Defendants have, to the best of Plaintiffs' knowledge, been liquidated.  Specifically, Plaintiffs' entries of "List 3" products that were assessed 10 percent duties were liquidated.  Plaintiffs' entries of "List 3" products that were assessed 25 percent duties were liquidated, and continue to be liquidated on an ongoing basis. Plaintiffs' entries of "List 4A" products that were assessed 15 percent duties were liquidated, and continue to be liquidated on an ongoing basis.  To the best of Plaintiffs' knowledge, CBP has not yet liquidated Plaintiffs' entries of "List 4A" products that were assessed 7.5 percent duties.  As an alternative to the timeliness basis identified in paragraph 19, *supra*, insofar as Plaintiffs' entries of products subject to duties imposed by USTR's various modifications were liquidated (or remain pending liquidation) less than two years prior to commencement of this action, this action is timely. Given the many intervening modifications of Defendants' Section 301 action between entry and liquidation, Plaintiffs could not reasonably have known until liquidation that their cause of action had accrued.  *Cf. LG Elecs. U.S.A., Inc. v. United States*, 991 F. Supp. 668, 672 n.5 (Ct. Int'l Trade 1997) ("To the extent this action lies under 28 U.S.C. § 1581(i), it was timely…This action accrued when LG had notice that Customs would not obey Commerce's order to liquidate at the agreed-upon rates."); *UniPro Foodservice, Inc. v. United States*, 577 F. Supp. 2d 1348, 1353 n.3 (2008) ("Plaintiff's cause of action accrued on June 24, 2004 when Commerce issued the liquidation instructions.").

22. ***Effective Date/Publication Date*** - As an additional alternative, Plaintiffs' causes of action accrued on the dates that the respective duties stemming from Defendants' attempted modifications entered into effect. That is, no earlier than: September 24, 2018, for the *List 3 10% Modification*, 83 Fed. Reg. 47,974, 47,974 (Sept. 21, 2018); May 10, 2019, for the *List 3 25% Modification*, 84 Fed. Reg. 20,459, 20,459 (May 9, 2019); September 1, 2019, for both the *List 4 10% Modification*, 84 Fed. Reg. 43,304, 43,304 (Aug. 20, 2019) and the *List 4A 15% Modification*, 84 Fed. Reg. 45,821, 45,821 (Aug. 30, 2019); and February 14, 2020, for the *List 4A 7.5% Modification*, 85 Fed. Reg. 3,741, 3,741 (Jan. 22, 2020). Or, in the final and most conservative possible interpretation of timeliness, Plaintiffs' causes of action with respect to each modification accrued no earlier than the date that notice of each modification was published in the *Federal Register*, as listed in the foregoing sentence. Under either of these alternative interpretations, Plaintiffs' action is timely filed with respect to its challenges to the *List 3 25% Modification*, the *List 4A 10% Modification*, the *List 4A 15% Modification,* and the *List 4A 7.5% Modification*. Insofar as the Court considers publication or implementation of each modification to be a final agency act (in lieu of collection of deposits or final duty payments), this is the earliest possible point in time that Plaintiffs "ha{d}, or should have had, notice of the final agency act or decision being challenged." *Ford Motor Co. v. United States*, 992 F. Supp. 2d 1346, 1356 (2014), *aff'd*, 811 F.3d 1371 (Fed. Cir. 2016).

23. Each of Defendants' attempted modifications was undertaken pursuant to 19 U.S.C. § 2417. Each attempted modification incorporated the duties introduced by any preceding modification(s) by reference. Insofar as 19 U.S.C. § 2417 conceives only of modification to action "being taken under {19 U.S.C. §} 2411," the statute does not authorize modification of a prior Section 307 modification. Stated differently, new modifications supplant old modifications

*in toto*, such that only one modification may exist at a time.  This appears to explain why USTR took care to recite all prior modifications in each successive modification.  *See, e.g.*, *List 4 10% Modification*, 84 Fed. Reg. at 43,304.  Thus, a timely challenge to a given modification concerns not only the duty newly introduced by that modification, but also any duties previously promulgated pursuant to Section 2417 that were incorporated into a subsequent Section 2417 action.

<u>**RELEVANT LAW**</u>

24. Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices.  19 U.S.C. § 2411(b).  If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing duties on imports from the country that administered the unfair act, policy, or practice investigated.  *Id*. §§ 2411(b), (c)(1)(B).

25. Section 304 of the Trade Act dictates that USTR "shall…determine what action, if any" to take "on or before…the date that is 12 months after the date on which the investigation is initiated."  *Id*. §§ 2414(a)(1)(B), (2)(B).

26. Section 307 of the Trade Act allows that USTR "may modify or terminate any action…being taken under" Section 301 if certain prerequisites are satisfied.  *Id*. § 2417(a)(1). "Before taking any action…to modify or terminate any action taken under" Section 301, USTR is required to "consult with" representatives of the domestic industry concerned and to "provide opportunity for the presentation of views" by "other interested persons affected" by the proposed modification or termination as to its effect and appropriateness.  *Id*. § 2417(a)(2).  Such modification or termination, moreover, is only permissible where, in relevant part, "action…being taken…is no longer appropriate" or the "burden or restriction on United States

commerce…of the acts, policies, and practices, that are the subject of {action being taken under Section 301} has increased or decreased."  *Id.* §§ 2417(a)(1)(B), (C).

27. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

28. The Administrative Procedure Act authorizes the Court to hold unlawful and set aside agency action, findings, and conclusions found to be, in relevant part:  "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; {or} (E) unsupported by substantial evidence."  5 U.S.C. § 706(2).

29. The statute governing the Court's Standard of Review requires the Court to "review the matter as provided in section 706 of title 5," *i.e.*, the Administrative Procedure Act.  28 U.S.C. § 2640(e).

## PROCEDURAL HISTORY

### I.      USTR's Investigation

30.  On August 14, 2017, former President Trump directed former Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning "any of China's laws, policies, practices, or actions that may be…harming American intellectual property rights, innovation, or technology development."  *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007, 39,007 (Aug. 17, 2017).  According to the President's policy statement, these

particular laws, policies, and practices were singled out because the "United States is a world leader in research-and-development-intensive, high-technology goods." *Id.*

31. On August 18, 2017, "{p}ursuant to the President's Memorandum," USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under {Section 301(b)(1) of} the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213, 40,213 (Aug. 24, 2017).  USTR stated that its investigation "initially will consider the following *specific* types of conduct," and mentioned four particular Chinese government acts and policies: "Made in China 2025;" mandated "particular terms for indemnities and ownership of technology improvements;" "systematic investment in, and/or acquisition of, U.S. companies…to obtain cutting-edge technologies;" and "unauthorized intrusions into U.S. commercial computer networks." *Id.* at 40,213-14 (emphasis supplied).  USTR requested comments on these four policies, and other policies "relating to technology transfer, intellectual property, and innovation." *Id.* at 40,214.

32. On March 22, 2018, USTR released a report announcing the results of its investigation. Office of the U.S. Trade Representative, "Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974" (Mar. 22, 2018), *available at* ustr.gov/sites/default/files/Section%20301%20FINAL.PDF ("Original Section 301 Report"). USTR found that certain "acts, policies, and practices by the Chinese government…are unreasonable or discriminatory and burden or restrict U.S. commerce," and specifically enumerated the acts therein. *Id*. at 17-18.  USTR based its findings on (1) China's use of foreign

ownership restrictions, foreign investment restrictions, and administrative licensing and approval

processes to pressure technology transfers from U.S. to Chinese companies, *id*. at 45; (2) China's

use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that

favor Chinese recipients, *id*. at 48; (3) China's facilitation of systematic investment in, and

acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and

intellectual property for purposes of large-scale technology transfer, *id*. at 147; and (4) China's

cyber intrusions into U.S. computer networks to gain access to valuable business information, *id*.

at 171.  USTR identified certain "technology-related sectors."  *Id.* at 100.  In its report, USTR

did not quantify the burden or restriction imposed on U.S. commerce by the investigated

practices.

33. On the same date, USTR published a "Fact Sheet" stating that "{a}n interagency team of

subject matter experts and economists estimates that China's policies result in harm to the U.S.

economy of at least $50 billion per year."  Office of the U.S. Trade Representative, "Section 301

Fact Sheet" (Mar. 22, 2018), *available at* ustr.gov/about-us/policy-offices/press-office/fact-

sheets/2018/march/Section-301-fact-sheet.  USTR also indicated that, consistent with a directive

from then-President Trump dated March 22, it would "propose additional tariffs" of 25% *ad*

*valorem* "on certain products of China, with an annual trade value commensurate with the harm

caused to the U.S. economy resulting from China's unfair policies."  *Id*.; *see Actions by the*

*United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or*

*Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg.

13,099, 13,100 (Mar. 27, 2018).

II.      **Lists 1 and 2**

34.  As USTR's Section 301 investigation was initiated on August 18, 2017, it faced a statutory twelve-month deadline ending in August 2018, within which to "determine what action, if any" to take in response.  *See* 19 U.S.C. § 2414(a)(2)(B).  Defendants undertook actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by the so-called List 1 and List 2.

35. On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin" set forth in an annex to the notice.  *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).  The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018."  *Id*.  USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation."  Office of the U.S. Trade Representative, "Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products" (Apr. 3, 2018), *available at* //ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

36.  On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 1."  *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

*Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).  USTR explained that it had

"narrow{ed} the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an

approximate annual trade value of $34 billion."  *Id*. at 28,711 (referencing 83 Fed. Reg. 14,906).

USTR also noted that it would "establish a process" by which U.S. stakeholders could "request

that particular products classified within a covered tariff subheading" be excluded.  *Id.* at 28,710.

37. At the same time that it finalized List 1, USTR announced a "Proposed Determination on

Additional {Section 301} Action" to impose a 25% *ad valorem* duty on a second proposed list of

Chinese products in order to "maintain the effectiveness of a $50 billion trade action" grounded

in its Section 301 investigation.  *Id*. at 28,711-12.  USTR announced a proposed "List 2"

covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id*. at

28,711-12 and Annex C.

38. On August 16, 2018, USTR published notice of its "determination" of the final list of

products subject to an additional duty of 25% *ad valorem* in List 2, comprising "279 tariff

subheadings" whose "annual trade value . . . remains approximately $16 billion."  *Notice of

Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology

Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

## III. Subsequent Modifications Pursuant to Section 307

39.  In the months that followed, Defendants expanded the scope of the duties imposed under

Section 301 of the Trade Act to cover imports worth more than $500 billion—ten times the

amount it had deemed "commensurate" with the findings of USTR's original investigation.  *See*

Office of the U.S. Trade Representative, "Under Section 301 Action, USTR Releases Proposed

Tariff List on Chinese Products" (Apr. 3, 2018), *available at* ustr.gov/about-us/policy-

offices/press-office/press-releases/2018/april/under-section-301-action-ustr.  Defendants did so

for reasons untethered to the unfair practices that USTR had investigated.

### A. List 3, Ten Percent Duties

40. Shortly after former President Trump directed USTR in April 2018 to consider imposing

duties on $50 billion in Chinese products, China threatened to impose retaliatory duties on the

same value of imports from the United States.  In response, former President Trump "instructed

the USTR to consider whether $100 billion of additional duties would be appropriate under

Section 301" due to "China's unfair retaliation" which harmed U.S. "farmers and

manufacturers."  The White House, "Statement from Donald J. Trump on Additional Proposed

Section 301 Remedies" (Apr. 5, 2018), *available at* www.whitehouse.gov/briefings-

statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

41. When USTR finalized List 1 in mid-June 2018, former President Trump warned China

that he would consider imposing additional duties on Chinese goods if China retaliated against

the United States.  *E.g.*, V. Needham & M. Greenwood, "Trump Announces Tariffs on $50

Billion in Chinese Goods," *The Hill* (June 15, 2018), *available at* thehill.com/homenews/

administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods ("The president

said the United States will pursue additional tariffs if China retaliates 'such as imposing new

tariffs on United States goods, services or agricultural products; raising non-tariff barriers; or

taking punitive actions against American exporters or American companies operating in

China.'").

42. Following through on his warning, on June 18, 2018, former President Trump formally

directed USTR to consider whether the United States should impose additional duties on

products from China with an estimated trade value of $200 billion—despite USTR having not

yet implemented List 1 and List 2.  Former President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" and the broader U.S.-China trade balance motivated his decision.  The White House, "Statement from the President Regarding Trade with China" (June 18, 2018), *available at* www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

43. Acknowledging the purpose of the President's directive, USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation.  Office of the U.S. Trade Representative, "USTR Robert Lighthizer Statement on the President's Additional China Trade Action" (June 18, 2018), *available at* ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

44. Despite these warnings from Defendants, China imposed 25% *ad valorem* duties on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% duties under List 1 (July 6, 2018) and List 2 (August 23, 2018).

45. About a week after China imposed its first round of retaliatory duties, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on {a list of} products {from} China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (July 17, 2018). As grounds for this modification, USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action . . . that is being taken under {Section 301} if . . . such action is being taken under Section 301(b) of this title and is no longer appropriate." *Id*. (citing 19 U.S.C. § 2417(a)(1)(c)). USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

46. In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed action to "the President's direction," the level of retaliatory duties imposed by China on U.S. imports "and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id*. Regarding this last point, USTR specified that because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017) . . . the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports." *Id.* Although USTR discussed China's retaliatory measures at length, it did not identify any

increased burdens or restrictions on U.S. commerce by means of the unfair practices that USTR had investigated.  *Id*. at 33,608-10.

47. USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory duties motivated its proposed action.  Former Ambassador Lighthizer stated that the proposed action came "{a}s a result of China's retaliation and failure to change its practices." Office of the U.S. Trade Representative, "Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action" (July 10, 2018), *available at* ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.  Former Ambassador Lighthizer furthermore distinguished the new duties from earlier duties, describing List 1 and 2 duties as "target{ing}" products "that benefit from China's industrial policy and forced technology transfer practices."  *Id.*

48. That same day, former President Trump suggested that the United States' trade imbalance with China supported the decision.  "@realDonaldTrump," *Twitter* (July 10, 2018, 9:17 PMEDT), twitter.com/realDonaldTrump/status/1005982266496094209.  Over the following weeks, then-President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory duties and the trade imbalance between the two nations. *See, e.g.*, "@realDonaldTrump," *Twitter* (July 20, 2018, 8:43 AM EDT), *available at* twitter.com/realDonaldTrump/status/1020287981020729344; "@realDonaldTrump," TWITTER (July 20, 2018, 8:51 AM EDT), *available at* twitter.com/realDonaldTrump/ status/1020290163933630464; "@realDonaldTrump," *Twitter* (July 25, 2018, 7:20 AM EDT), *available at* twitter.com/realDonaldTrump/status/1022079127799701504;

"@realDonaldTrump," *Twitter* (July 25, 2018, 7:01 AM EDT), *available at*
twitter.com/realDonaldTrump/status/1022074252999225344.

49. Within days of these statements, former Ambassador Lighthizer announced that, in light
of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to
25% *ad valorem*.  Rather than addressing the specific practices that USTR investigated pursuant
to Section 301 of the Trade Act, he stated that "{r}egrettably . . . China has illegally retaliated
against U.S. workers, farmers, ranchers and businesses," and referenced a broad desire that
China "change its harmful policies and behavior…"  Office of the U.S. Trade Representative,
"Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action" (Aug. 1,
2018), *available at* ustr.gov/about-us/policy-offices/press-office/press-
releases/2018/august/statement-us-trade-representative.

50. Shortly thereafter, USTR, at the direction of then-President Trump, formally proposed
"raising the level of the additional duty in the proposed supplemental action from 10 percent to
25 percent."  *Extension of Public Comment Period Concerning Proposed Modification of Action
Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer,
Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018) ("*Extension of
List 3 Comments*").  USTR also set new dates for a public hearing over six days ending on
August 27, 2018.  *See id.*; Office of the U.S. Trade Representative, "Public Hearings on
Proposed Section 301 Tariff List" (Aug. 17, 2018) (modifying hearing schedule), *available at*
ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-
proposed-section-301.

51. At the same time, USTR adjusted the deadlines for the submission of written comments,
setting September 6, 2018—less than a month later—as the new deadline for both initial and

rebuttal comments from the public.  *Extension of List 3 Comments*, 83 Fed. Reg. at 38,761.  That adjustment, deviating from USTR's past practice, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties.  USTR also limited each hearing participant to five minutes.  Docket No. USTR-2018-0026, beta.regulations.gov/ document/USTR-2018-0026-0001.  Nevertheless, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments, *Notice of Modification of Section 301 Action: China's Acts, Policies and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974, 47,974 (Sept. 21, 2018) ("*List 3 Modification*").  By comparison, USTR reported receiving "approximately 70 written submissions in the public docket" in the course of the original investigation.  Original Section 301 Report at 9.

52. Shortly after receiving final comments from the public, former President Trump announced he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China," effective September 24.  The White House, "Statement from the President" (Sept. 17, 2018), *available at* www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  The President never indicated any consideration of the public comments or testimony.  *See id.*  Notably, the President himself acknowledged that at this point the Section 301 investigation had been ongoing "for more than 12 months," *i.e.*, had passed the statutory deadline fixed by 19 U.S.C. § 2414(a)(2)(B).  *See id.*  Once again, the President made clear that China's response to the $50 billion duty action (*i.e.*, List 1 and List 2 duties) motivated his decision, and further promised to "immediately pursue phase three"— an additional $267 billion duty action — "if China takes retaliatory action against our farmers or other industries."  *Id*.

53. A few days later, USTR published notice of the additional products subject to duties, commonly known as "List 3." *List 3 Modification*, 83 Fed. Reg. at 47,974. USTR imposed a 10% *ad valorem* duty effective September 24, that was set to rise automatically to 25% on January 1, 2019. *Id*. USTR determined that List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id*. USTR did not specifically address any of the comments or testimony received. *Id*. at 47,974-75.

54. In describing the substantive basis for the List 3 modification, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act (in addition to Section 307(a)(1)(C)), which provides that USTR "may modify or terminate any action . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id*. (brackets omitted). USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id*.

55. With regard to USTR's allegation that the relevant burden had increased "following the one-year investigation period," it is noteworthy that the comment period for List 2 duties ended on July 31, 2018, *see* 83 Fed. Reg. at 28,710; that USTR promulgated List 2 duties on August 16, 2018, *see* 83 Fed. Reg. at 40,823; that the one-year investigation period ended one or two days after that; and that the comment period for List 3 duties ended on September 6, 2018, *see Extension of List 3 Comments*, 83 Fed. Reg. at 38,761. Given how close in time List 2 and List 3 were commented upon and promulgated, and that China's retaliatory duties had largely gone into

effect in early July 2018, USTR's basis for claiming an "increase" in burden warranting duties on an additional $200 billion worth of goods on September 21, 2018, vis-à-vis the one-year investigation period, is not readily apparent and was unexplained in the notice promulgating List 3. *See List 3 Modification*, 83 Fed. Reg. at 47,974.

56. USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion duty action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *List 3 Modification*, 83 Fed. Reg. at 47,975.

### B. List 3, Twenty-Five Percent Duties

57. Subsequently, based on the progress made with China in trade negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would "postpon{e}" the application of 25 percent duties to products on List 3. Each of these postponements was promulgated pursuant to Section 307. The latter of these postponements was indefinite, *i.e.*, "until further notice." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966, 7,966 (Mar. 5, 2019).

58. The trade negotiations ultimately fell apart. In May 2019, USTR announced its intent to raise the duty rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export. *See List 3 25% Modification*, 84 Fed. Reg. 20,459 (May 9, 2019); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and*

*Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).  The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate.  *List 3 25% Modification*, 84 Fed. Reg. at 20,459.  Unlike with past imposition of new duties, USTR did not seek public comment but rather simply announced that the increase would occur.  *Id*.

59. Recognizing that List 3 would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, USTR in June 2019 created a *post hoc* process for the public to seek exclusions from duties imposed on products appearing on "List 3" on a product-specific basis.  *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).  Whirlpool submitted 19 such exclusion requests, all of which were denied within two years of the date of this Complaint.  USTR did not provide reasoning for its denials.

60. For example, with respect to exclusion request number USTR-2019-0005-23882, USTR's denial came in the form of a one-page letter wherein USTR stated "your request was denied because the request failed to show that the imposition of additional duties on the particular product would cause severe economic harm to you or other U.S. interests."  *See* Letter from USTR, "RE: Product Exclusion Request Number USTR-2019-0005-23882" (Apr. 21, 2020), *available at* https://comments.ustr.gov/s/requestdetails?rid=H2KCRRYJ8P.  However, Whirlpool had established that the product in question, a critical component in Whirlpool's finished home appliances, "currently cannot be sourced from an existing U.S. supplier, and there is only limited supply from countries other than China."  USTR Request ID USTR-2019-0005-

23882 (Received Sept. 2019), *available at* comments.ustr.gov/s/requestdetails?rid= H2KCRRYJ8P.  USTR did not address this in its denial.

61. The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR granted exclusions "{t}o support efforts to combat COVID-19."  *See, e.g.*, *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 86 Fed. Reg. 13,785 (Mar. 10, 2021).  To the best of Plaintiffs' knowledge, the exclusions originally granted to products covered by List 3 for reasons unrelated to COVID-19 expired on December 31, 2020, at the latest.  *See, e.g.*, *Notice of Amendment to Product Exclusion and Product Exclusion Extension: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 86 Fed. Reg. 4,171, 4,171 (Jan. 15, 2021).

### C. List 4A, Ten Percent Duties

62. On May 17, 2019, a mere eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR published notice of its intent to proceed with yet another list — "List 4" — covering even more products subject to additional duties.  Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth $300 billion.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019) ("*List 4 Comments Request*") ("List 4," as proposed, is set forth in the Annex to this proposal).  USTR explained that its decision was motivated by China's "retreat{} from specific commitments made in

previous {negotiating} rounds {and its} announce{ment of} further retaliatory action against U.S. commerce." *Id*.

63. Similar to the process it followed for List 3, USTR invited the public to comment on proposed List 4 and participate in a hearing. *Id*. The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, beta.regulations.gov/document/USTR-2019-0004-0001. Although an opportunity to comment was announced, the timeline for participation in the hearing left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and again limited witnesses to five minutes of testimony at the hearing. *Id*.

64. On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, former President Trump announced that List 4 duties would become effective September 1, 2019 at a rate of 10% *ad valorem*. "@realDonaldTrump," *Twitter* (Aug. 1, 2019, 1:26 PM EDT), twitter.com/real DonaldTrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

65. On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches, "List 4A" and "List 4B." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019) ("*List 4 10% Modification*"). List 4A would impose a 10% *ad valorem* duty on goods worth roughly $120 billion, effective September 1, 2019. *Id*. at 43,304 (List 4A is set forth in Annex A). List 4B would impose a 10% *ad valorem* duty on the remaining goods, effective December 15, 2019. *Id*. at 43,305 (List 4B is set forth in Annex C). Once again, USTR

did not specifically address any comments or testimony provided, other than to claim that its determination "takes account of the public comments and the testimony." *Id*.

66. As legal support for List 4, USTR cited Section 307(a)(1)(B) and (C) of the Trade Act – this time both in soliciting comments and in notifying the List 4 modification. *List 4 Comments Request*, 84 Fed. Reg. at 22,564; *List 4 10% Modification*, 84 Fed. Reg. at 43,304. USTR claimed that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "{t}he burden or restriction on United States commerce of the acts, policies, and practices, that are the subject of the {Section 301} action has increased or decreased," or (2) "the action . . . is no longer appropriate." *List 4 10% Modification*, 84 Fed. Reg. at 43,304. But instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory duties on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id*.

### D. List 4, Fifteen Percent Duties

67. Ten days later, USTR published notice of an additional modification to Section 301 action, an increase to the duty rate applicable to List 4 goods, from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the duty rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id*. at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as

grounds for its action.  *Id.*  USTR did not solicit public comments before promulgating this additional modification.

68. Thereafter, the United States and China implemented a limited trade deal negotiated near the end of 2019.  Office of the U.S. Trade Representative, "United States and China Reach Phase One Trade Agreement" (Dec. 13, 2019), ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-and-china-reach.  During that time, Defendants declined to impose additional duties on imports covered by List 4B.

69. Specifically, on December 18, 2019, having negotiated a limited trade deal with China, USTR published notice of what USTR termed a further modification of Section 301 action, *i.e.*, the indefinite suspension of "the imposition of additional duties of 15 percent on products of China" appearing on List 4B.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019).

## E. List 4, Seven-and-a-Half Percent Duties

70. On December 18, 2019, USTR also stated that it "expects to issue in the near future a notice reducing the rate of additional duty applicable to" products appearing on List 4A, *id.*, 84 Fed. Reg. at 69,447, an action that USTR ultimately took one month later under the auspices of yet another Section 307(a)(1) modification, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).  The 7.5% duty rate on List 4A products became applicable on February 14, 2020.  *Id.*

71. As justification for its modification, USTR again referenced the December "agreement on a phase one trade deal that requires structural reforms and other changes to China's economic

and trade regime," only some of which were related to issues covered in the Section 301 investigation.  *See id.* at 3,741.  The modification was undertaken "{i}n light of the scheduled entry into force of the phase one agreement," and "takes into account the extensive comments and testimony previously provided in connection with the August 20 modification," *i.e.*, comments received roughly six months prior.  *Id.*  USTR did not solicit additional comments in advance of the List 4A, 7.5% modification.

72. The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint.  Although the proposed duties on products covered by List 4B remain suspended, then-President Trump continually threatened to impose them if China does not meet its obligations under their limited trade deal.  *See, e.g*., "@realDonaldTrump," *Twitter* (June 22, 2020, 10:22 PM EDT), *available at* twitter.com/realDonaldTrump/status/1275252814206447618 ("The China Trade Deal is fully intact.  Hopefully they will continue to live up to the terms of the Agreement!").

<u>STATEMENT OF CLAIMS</u>

<u>COUNT ONE</u>

<u>(DECLARATORY JUDGMENT – VIOLATION OF THE TRADE ACT OF 1974)</u>

73. Paragraphs 1 through 72 are incorporated by reference.

74. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

75. The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the introduction or increase of duties upon List 3 or List 4A products.

76. Pursuant to Section 301 of the Trade Act, USTR may impose duties when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b).  USTR failed to predicate its action giving rise to the introduction or adjustment of duties upon List 3 or List 4 products on any such determination.

77. If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated."  19 U.S.C. §§ 2414(a)(1)(B), (2)(B).  USTR's action adding or increasing duties to List 3 products occurred on or after September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.  Likewise, USTR's action adding or adjusting duties to List 4 products occurred in August 2019 or thereafter.  Insofar as Defendants acted beyond the 12-month period specified by the statute, Defendants acted contrary to Section 304 of the Trade Act.

78. Section 307 of the Trade Act authorizes USTR to "modify or terminate any action . . . being taken under" Section 301.  The statutory focus on action "being taken" limits modification to the type of action and the products or class of products subject to the original Section 301 action.  The introduction of duties on products covered by List 3 and List 4 was an impermissible multifold expansion of the affected products, not a "modification" within the meaning of Section 307(a).  Insofar as Defendants alleged that the imposition or increase of duties on products covered by List 3 and List 4 constituted a "modification" of action "being taken" under Section 301 of the Trade Act, Defendants acted contrary to law.

79. Section 307 of the Trade Act authorizes USTR to "modify or terminate any action . . . being taken under" Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices that "are the subject of" the action "being taken" under Section 301 increases or decreases.  19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase duties for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.  Congress did not authorize USTR to impose open-ended duty actions covering hundreds of billions of dollars in imports untethered to its focused investigatory findings. Relatedly, neither subsection (B) nor subsection (C) of Section 307(a)(1) contemplate that USTR's consideration of issues beyond those acts or policies originally investigated, to the extent they may be considered at all, would predominate USTR's rationale for a modification. Finally, USTR failed to explain how the relevant burdens of China's technology transfer and intellectual property policies had "increased" in the short period between the close of the one-year investigation window and notice of duties on List 3 products.  Insofar as the modifications promulgated pursuant to Section 307 were based on an alleged increase in burden for reasons

unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act, Defendants acted contrary to law. Moreover, insofar as USTR's consideration of acts, policies, or practices other than those USTR investigated pursuant to Section 301 of the Trade Act predominated USTR's rationale for modification, Defendants' action was contrary to law. Finally, insofar as USTR failed to identify or explain with any specificity an alleged "increase" in burden over the relevant time period, Defendants acted contrary to law.

80. Section 307 of the Trade Act authorizes USTR to "modify or terminate any action . . . being taken under" Section 301(b) of the Trade Act only after it has consulted with representatives of the domestic industry concerned and provided opportunity for interested parties to present views concerning the modification's effects and whether the modification is appropriate. This requirement includes comment concerning both any new aspect sought to be introduced by a modification, and any aspect previously introduced that a new modification seeks to carry forward. Insofar as Defendants did not abide by these procedures in advance of each Section 307 modification, *i.e.*, when imposing and adjusting duties on products covered by List 3 and List 4, Defendants acted contrary to law.

81. Section 307 of the Trade Act authorizes USTR to "modify or terminate any action . . . being taken under" Section 301. Section 307 does not conceive of the modification of action previously taken pursuant to Section 307, *i.e.*, a 'modification of the modification.' As such, only one modification taken pursuant to Section 307 may exist at a time. If, however, multiple modifications may exist, then only one may exist with respect to goods affected by a prior modification. Insofar as Defendants' various attempted modifications were contrary to law for the reasons described above, the invalidity of the initial introduction of any aspect, for example, ten percent duties on "List 3" products, renders that aspect invalid with respect to any subsequent

modification that attempted to carry the aspect forward.  Likewise, the invalidity of any action prescribed by an attempted modification renders all actions prescribed by the attempted modification invalid.

82. Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions giving rise to and adjusting duties affecting products on List 3 and List 4, and subsequent modifications thereof, are *ultra vires* and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

83. Paragraphs 1 through 82 are incorporated by reference.

84. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; {or} (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

85. Defendants exceeded their authority under the Trade Act in introducing and/or adjusting duties upon List 3 or List 4 products and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

86. Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.  Insofar as Defendants failed to offer such evidence, Defendants acted contrary to law.

87. Defendants also introduced and/or increased duties upon List 3 or List 4 products in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.  Defendants' decision-making resulted in the unlawful imposition of duties on imports covered by List 3 and List 4.

88. Defendants' administration of the procedures set forth for requesting exclusion from duties applicable to List 3 products is arbitrary and capricious because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when

making their decisions, and failed to adequately explain their rationale.  Defendants'

administration of these exclusion procedures otherwise fails to observe the procedure required by

law and Defendants' decisions to deny requested exclusions are unsupported by substantial

evidence. *Cf. generally JSW Steel (USA) Inc. v. United States*, Ct. No. 19-00133, Slip Op. 20-111

at 13-23 (Aug. 5, 2020).

<u>**PRAYER FOR RELIEF**</u>

Wherefore, Plaintiffs respectfully request that this Court:

1)  declare that Defendants' actions resulting in duties or increases to duties on products covered by List 3 and List 4A are unauthorized by, and contrary to, the Trade Act;

2)  declare that Defendants arbitrarily and unlawfully introduced and/or increased duties upon List 3 and List 4A products in violation of the APA;

3)  declare that Defendants arbitrarily, unlawfully, and without substantial evidence denied Plaintiffs' requests that certain products be excluded from the duties applicable to products covered by List 3;

4)  vacate the List 3 and List 4A/B rulemaking;

5)  order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to any modification of the Section 301 applicable to products appearing on List 3 and List 4A;

6)  award Plaintiffs their costs and reasonable attorney fees; and

7)  grant such other and further relief as may be just and proper.


Respectfully Submitted,

<u>/s/ Jack A. Levy</u>

Jack A. Levy
Myles S. Getlan
William Baldwin
James E. Ransdell
Cassidy Levy Kent (USA) LLP
900 19th Street NW, Suite 400
Washington, DC 20006
(202) 567-2313
jlevy@cassidylevy.com

*Counsel to Whirlpool Corporation*
*and Maytag Sales, Inc.*